**John H. Howard et al., Appellees, v. William Foster Burns, Appellant.**

**Gen. No. 21,424.    (Not to be reported in full.)**

Appeal from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding. Heard in this court at the March term, 1915. Affirmed. Opinion filed October 30, 1916.

### Statement of the Case.

Bill in chancery by John H. Howard *et al.*, complainants, against William Foster Burns, defendant, in the Circuit Court of Cook county, to foreclose a trust deed.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

From a decree in favor of complainants, defendant appeals.

The following facts appeared in substance: Parties named Shaw made notes secured by trust deed on the premises in question, the notes being of the amounts of $3,000 each as to two, and $24,000 as to one, maturing January 26, 1912, January 26, 1913 and January 26, 1914, respectively. Subsequently the Shaws conveyed to one Youngquist, who conveyed to one Jacobson and wife, who in turn conveyed to one Morris, all the conveyances being subject to the mortgage indebtedness. Defendant Burns obtained judgment against Morris, and on a sheriff's sale, under the judgment, acquired Morris' interest in the premises, Burns also redeeming from a master's sale under a mortgage given by the Shaws which was junior to that sought to be foreclosed. Burns had no other source of claim or title. When the first $3,000 note became over due, James L. Shaw, one of the makers, paid it, together with accrued interest, to the trustee under the trust deed, in order to avoid foreclosure. One Howard, who filed the bill in his own name, but in fact in behalf of himself and Shaw, furnished part of the amount paid to the trustee, under the agreement, as between himself and Shaw, that he should either receive back his money, or obtain the mortgaged property subject to the balance of the mortgage debt. The payment by Shaw to the trustee was upon the agreement that, as to himself and Howard, Shaw should be subrogated to the rights of the holder of the indebtedness, but subordinately to the lien of the principal and interest of the unpaid notes. Subsequently the unpaid notes were assigned to one Stonehill, who was a party to the proceedings. Burns filed an intervening petition asking to be made defendant, which was allowed and he answered thereto, and he, with Shaw and Stonehill, subsequently filed cross-bills setting up their sev-

eral interests and claims, to which answers were filed and replications joined. The cause was referred to a master to find and report the facts and conclusions of law, and a decree was entered in accordance with his report, which was substantially as above stated. The decree found in addition to the above, that Shaw was subrogated to the rights of the holder of the first principal note, and that his payments were made without fraud to protect his liability as maker and to preserve his right of subrogation; that his rights were subordinate to those of Stonehill on the other $3,000 note and the $24,000 note, and the costs and expenses of the proceeding; that Howard had an interest in the first $3,000 note for the amount advanced, subject to the rights of Stonehill.

On the filing of the original bill a receiver of the rents, issues and profits of the mortgaged premises was appointed, the trust deed mortgaging such rents, etc., as security for the indebtedness. Solicitors' fees of $500 were allowed to Howard and $600 to Shaw, they being represented by separate solicitors, and a balance of $2,419.40 in the hands of the receiver and clerk of court arising from the rents, etc., was decreed to Stonehill, to be credited on the amount found due him.

THOMAS TAYLOR, JR., for appellant; HERBERT A. LUNDAHL, of counsel.

S. P. SHOPE and THOMAS L. STITT, for appellees.

WILLIAM B. JARVIS, for appellee Carl A. Stonehill.

MR. JUSTICE HOLDOM delivered the opinion of the court.

## Abstract of the Decision.

1. MORTGAGES, § 503*—*when evidence sufficient to support decree of foreclosure.* On a bill to foreclose a trust deed, a finding of the master that complainants were entitled to relief and a decree of the chancellor granting such relief, *held* supported by the evidence.

2. MORTGAGES, § 514*—*when decree of foreclosure should include appointment of receiver.* Where a trust deed mortgages the rents, issues and profits of the mortgaged premises as security for the debt, it is the duty of the chancellor, on a bill for foreclosure, to appoint a receiver to collect such rents, etc., since they become, under such circumstances, as much a part of the security as the land and its improvements.

3. MORTGAGES, § 738*—*how equity of redemption affected by appointment of receiver.* Where a trust deed mortgages the rents, issues and profits of the mortgaged premises during the period of redemption as security for the mortgage debt, the rights of the owner of the equity of redemption are subject to all the provisions of the trust deed, including the conveyance of the rents, etc., so that the appointment of a receiver operates to deprive such owner of the possession of the premises and the right to collect income, as well as to exercise other acts of ownership, until the mortgage debt is extinguished or the property redeemed.

4. MORTGAGES, § 198*—*when purchaser of equity cannot enforce personal liability of mortgagor.* Where property is conveyed subject to a mortgage, the personal liability of the mortgagor on the mortgage notes cannot be enforced by purchasers subsequent to the mortgage.

5. MORTGAGES, § 163*—*when mortgagor purchasing notes is subrogated to holder.* A mortgagor, not the owner of the equity of redemption, who, by virtue of his primary liability as maker of the mortgage notes, pays one of them to the holder thereof, has, as to subsequent purchasers and lien holders, a right to look to the property for reimbursement, and is subrogated to all the rights of the holder of the notes paid.

6. MORTGAGES, § 133*—*when purchase of note does not destroy lien.* On a bill to foreclose a trust deed securing several notes maturing at different times, one of which was overdue, where it appeared that the maker of the notes arranged with one not a party to the transaction to advance part of the money necessary to pay the overdue note, an agreement between the maker and such person that such person should share in the security and be reimbursed either by money realized from a sale of the mortgaged premises or by acquiring the property at the sale, *held* not illegal

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

or subject to attack by third persons whose interests were not infringed by the transaction.

7.  MORTGAGES, § 241*—*when trustee's agreement to keep alive paid note not illegal.* On a bill to foreclose a trust deed securing several notes, maturing at different times, one of which is overdue, where it appeared that the maker of the notes paid the amount due on the overdue note to the trustee, an agreement between the maker and the trustee that the paid note should not be marked paid, but retained and kept alive for the benefit of the maker, subject to the rights of the holder of the unpaid notes, *held* not illegal.

8.  MORTGAGES, § 187*—*when mortgagor subrogated to rights of creditor.* Where a mortgagor sells the mortgaged parcel subject to the mortgage, the land in equity becomes a primary fund for the payment of the debt, and the vendor occupies the position of surety, and on payment of the mortgage debt is subrogated to the rights of the creditor.

9.  MORTGAGES, § 660*—*when solicitors' fees apportionable.* Although it is unusual to apportion solicitors' fees in an equity proceeding, yet where the parties to whom the fees are allowed are represented by different solicitors, as, for example, where such fees are allowed to the complainant in the original bill and to the complainant in a cross-bill, a separate allowance to each is warranted.

10.  APPEAL AND ERROR, § 384*—*when lack of necessity of cross-bill cannot be urged.* The fact that the filing of a cross-bill is unnecessary cannot be availed of on appeal where it was not objected to before the chancellor.

11.  COSTS, § 52*—*when solicitors' fees are properly costs.* Solicitors' fees allowed in a chancery proceeding are properly costs in the cause.

*See **Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.**